UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WILLIAMS,

               Plaintiff,

v.

FIRST NETWORK, LLC,
ELITE INTEGRITY LLC,
AMBITIOUS MARKETING GROUP,
OPTIMUM RESOURCE GROUP,
KAMISHA MARIE DANIEL,
MARTINEE LASHUNN JACKSON,
MYESHIA S. GIBSON, and
ROSTAM VARAHRAMI,

               Defendants.

_____/

## COMPLAINT

**I.      Introduction**

1.      Plaintiff is a victim of credit identity theft, whose stolen personal and financial

information was used to create a counterfeit credit card account and fake debt. Defendants are

debt collectors and credit identity thieves who acquired and used the stolen information and

counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other

adverse consequences, and to extort the payment of money from plaintiff.

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721

*et seq*.

3.      Defendants, along with other entities and individuals to be identified in discovery,

1

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      Additionally, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

8.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

## II.     Jurisdiction

9.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.    Parties

10.     Plaintiff Thomas Williams is an adult, natural person. Mr. Williams is a

"consumer" and "person" as the terms are defined and used in the FDCPA.

11.     Defendant First Network, LLC ("First Network"), also known as Clear View Mediation, is an active Montana limited liability company, organized on August 3, 2015. The Annual Report filed by First Network with the State of Montana on February 13, 2020 states that the principal business address of First Network is 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843, the Managing Member of First Network is defendant Kamisha Marie Daniel, and the registered agent of First Network is First Step, LLC, 1040 Partridge Place, Suite 3, Helena, Montana 59602. First Network uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. First Network regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. First Network is a "debt collector" as the term is defined and used in the FDCPA.

12.     First Network through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Thomas that are described in this complaint.

13.     First Network was organized by non-party Daniel Jensen as a "shelf company." A shelf company is a corporation or limited liability company that is created and left with no activity – metaphorically put on the "shelf" to "age"until it is ready to be sold. On April 24, 2009, the FDIC issued a Special Alert that stated: "Shell and shelf companies typically have no physical presence other than a mailing address, have no employees and produce little, if anything, with independent economic value. They can be created domestically or in a foreign country. Shell and shelf companies are often formed by individuals and businesses to conduct legitimate transactions. *However, they can be and have been used as vehicles for common financial crime schemes such as money laundering, fraudulent loans and fraudulent purchasing. By virtue of the*

*ease of formation and the absence of ownership disclosure requirements, shell and shelf companies are an attractive vehicle for those seeking to conduct illicit activity.*" Italics added.

14.     In May 2019, defendant Kamisha Marie Daniel purchased the shelf company, First Network, LLC, paying $1,400.00.

15.     On June 24, 2019, defendant Kamisha Marie Daniel filed with the Clerk of Orange County, California, a Fictitious Business Name Statement (No. 20196547373), registering "First Network, 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843," to conduct business using the fictitious business name "Clear View Mediation."

16.     On June 25, 2019, defendant Kamisha Marie Daniel anonymously registered through FastDomain Inc., the internet domain www.ViewMediation.com. The domain links to an active internet website for "Clearview Mediation, 10620 Treena Street, Suite 230, San Diego, California 92131." However the address is merely a virtual office rented by defendants from Regus, in efforts to conceal defendant's true location and identity. The website provides the following contact information: Telephone (833) 561-7812; Fax (714) 786-8097; and E-Mail info@viewmediation.com. The website states: "Clear View Mediation is a collection agency . . . with 20+ years of experience . . . in full compliance with all applicable Federal and State Laws, including The Fair Debt Collection Practices Act." Defendants use the domain and multiple, related email addresses to communicate with consumers, including: info@viewmediation.com, jessica.c@viewmediation.com, and kdaniel@viewmediation.com.

17.     On September 23, 2019, defendant Kamisha Marie Daniel, in her capacity as "CEO and Sole Owner" of "Clear View Mediation," obtained from the City of Garden Grove, California, a License (#319633) to operate a "Call Center" at 12900 Garden Grove Boulevard, Suite 240, Garden Grove, California 92843, Telephone 833-561-7812.

18.     First Network through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Thomas that are described in this complaint.

19.     Defendant Elite Integrity LLC ("Elite") is an active California limited liability company, TIN: 46-561xxxx, registered on May 5, 2014. The Statement of Information filed by Elite with the State of California on November 1, 2019 states that the Principal Office of Elite is at 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843, and that the CEO, Managing Member and Registered Agent of Elite is defendant Kamisha Marie Daniel, 27211 Spectrum, Irvine, California 92618. Elite uses multiple telephone numbers, including 626-840-6993, which is listed to defendant Martinee Lashunn Jackson. Elite uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Elite regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Elite is a "debt collector" as the term is defined and used in the FDCPA.

20.     On June 24, 2019, defendant Kamisha Marie Daniel filed with the Clerk of Orange County, California, a Fictitious Business Name Statement (No. 20196547374), registering "Elite Integrity, 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843," to conduct business using the fictitious business name "Top Auto Warranty."

21.     According to the Workers' Compensation Insurance Ratings Bureau of California, Elite Integrity LLC maintains workers' compensation insurance through Sequoia Insurance Company for Elite Integrity LLC employees, with business locations at 12822 Garden Grove Boulevard, Suites A and B, Garden Grove, California 92843, and 12900 Garden Grove Boulevard, Suites 214 and 240, Garden Grove, California 92843.

22.     On September 18, 2015, defendant Kamisha Marie Daniel filed with the Clerk of

Orange County, California, a Fictitious Business Name Statement (No. 20156419162),

registering "Elite Integrity LLC" to conduct business using the fictitious business name "Auto

Protection Plus."

23.     On August 1, 2019, defendants Elite Integrity LLC and Kamisha Marie Daniel

obtained from the City of Garden Grove, California, a License (#316979) to operate a "Call

Center" at 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843,

Telephone 800-908-8592.

24.     On September 15, 2020, defendants Elite Integrity LLC and Kamisha Marie

Daniel obtained from the City of Garden Grove, California, a License (#316979) to operate a

"Call Center" at 12900 Garden Grove Boulevard, Suite 214, Garden Grove, California 92843,

Telephone 800-908-8592.

25.     On April 28, 2020, Elite Integrity LLC, located in Garden Grove, California, was

approved by the Small Business Administration for a PPP Loan in the amount of $150,000.00-

$350,000.00 from Navy FCU, to supposedly retain jobs for an undisclosed number of employees.

The application submitted by defendants to obtain the PPP Loan will need to be obtained in

discovery.

26.     The Better Business Bureau website contains at least sixty reports by consumers,

alleging that they have been defrauded by Elite and its call center employees.

27.     Elite through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Thomas that are described in this complaint.

28.     Defendant Ambitious Marketing Group ("AMG") is an active Nevada

corporation, incorporated June 23, 2016. AMG registered to do business in California on October

19, 2017. The Statement of Information filed by AMG with the State of California on February

11, 2019, states that the Principal Office of AMG is 12900 Garden Grove Boulevard, Suite 240, Garden Grove, California 92843, and that the CEO, Secretary, CFO and Registered Agent of AMG is defendant Martinee Lashunn Jackson, 17 Sacred Path, Irvine, California 92618. AMG also purports to do business at 500 North Rainbow Boulevard, Suite 300A, Las Vegas, Nevada 89107. AMG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. AMG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. AMG is a "debt collector" as the term is defined and used in the FDCPA.

29.     The Better Business Bureau website contains multiple reports by consumers, alleging that they have been defrauded by AMG and its call center employees.

30.     AMG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Thomas that are described in this complaint.

31.     Defendant Optimum Resource Group, LLC ("ORG") is an active California limited liability company, TIN: 82-214xxxx, registered on July 3, 2017. The Statement of Information filed by ORG with the State of California on June 11, 2019 states that the Principal Office of ORG is 14271 Jeffrey Road, Suite 469, Irvine, California 92620, but the address is merely a private mailbox rented from The UPS Store No. 6127. Upon information and belief, ORG actually operates its call center at 15941 Redhill Avenue, Suite 203, Tustin, California 92780. The Managing Members of ORG are defendants Kamisha Marie Daniel and Rostam Varahrami. ORG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ORG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ORG is a "debt collector" as

the term is defined and used in the FDCPA.

32.     AMG through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Thomas that are described in this complaint.

33.     Defendant Kamisha Marie Daniel is a natural person, age 48, purportedly residing at 8 Del Carlo, Irvine, California 92602. Ms. Daniel sometimes uses the email addresses kamisha_daniel@yahoo.com and kamisha_daniel@ca.rr.com. Ms. Daniel is an owner, officer, member, manager, employee and agent of defendants First Network, Elite, AMG and ORG. Ms. Daniel uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Daniel regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Daniel is a "debt collector" as the term is defined and used in the FDCPA.

34.     Ms. Daniel is a former member of the street gang "Denver Lane Bloods" and a convicted felon, indicted February 27, 1996 for: (1) Conspiracy, 18 U.S.C. § 1371; (2) Armed Bank Robbery, Aiding and Abetting, 18 U.S.C. § 2113(a),(d); and Using or Carrying a Firearm During a Violent Crime, Aiding and Abetting, 18 U.S.C. § 924(c), and having served time in a California penitentiary. See *USA v. Kamisha Marie Daniel*, United States District Court, Central District of California (Western Division - Los Angeles), Case No. 2:96-cr-00212-PA-2.

35.     Ms. Daniel (a) created the collection policies and procedures used by First Network, Elite, AMG and ORG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of First Network, Elite, AMG and ORG, (c) oversaw the application of the collection policies and procedures used by First Network, Elite, AMG and ORG, and their

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

First Network, Elite, AMG and ORG, and their employees and agents, to collect debts from

consumers, including the tactics and scripts that were used to attempt to collect an alleged debt

from Mr. Williams, (e) ratified the unlawful debt collection practices and procedures used by

First Network, Elite, AMG and ORG, and their employees and agents, in connection with their

common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

and ratified the unlawful debt collection practices used by First Network, Elite, AMG and ORG,

and their employees and agents, in attempts to collect an alleged debt from Mr. Williams.

36.     Ms. Daniel directly and indirectly participated in the efforts to collect an alleged

debt from Mr. Williams that are described in this complaint.

37.     Defendant Martinee Lashunn Jackson, also known as Lashunn Jackson, is a

natural person, age 46, purportedly residing at 17 Sacred Path, Irvine, California 92618. Ms.

Jackson is an owner, officer, member, manager, employee and agent of defendants First

Network, Elite, AMG and ORG. Ms. Jackson uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. Ms. Jackson regularly collects

or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Ms. Jackson is a "debt collector" as the term is defined and used in the FDCPA.

38.     Ms. Jackson (a) created the collection policies and procedures used by First

Network, Elite, AMG and ORG, and their employees and agents, in connection with their

common efforts to collect consumer debts, (b) managed or otherwise controlled the daily

collection operations of First Network, Elite, AMG and ORG, (c) oversaw the application of the

collection policies and procedures used by First Network, Elite, AMG and ORG, and their

10

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by

First Network, Elite, AMG and ORG, and their employees and agents, to collect debts from

consumers, including the tactics and scripts that were used to attempt to collect an alleged debt

from Mr. Williams, (e) ratified the unlawful debt collection practices and procedures used by

First Network, Elite, AMG and ORG, and their employees and agents, in connection with their

common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in,

and ratified the unlawful debt collection practices used by First Network, Elite, AMG and ORG,

and their employees and agents, in attempts to collect an alleged debt from Mr. Williams.

39.     Ms. Jackson directly and indirectly participated in the efforts to collect an alleged

debt from Mr. Williams that are described in this complaint.

40.     Defendant Myeshia S. Gibson, also known as "Kelly Gibson," is a natural person,

age 34, purportedly residing at 8 Del Carlo, Irvine, California 92602. Ms. Gibson is a manager,

employee and agent of defendants First Network, Elite, AMG and ORG. Ms. Gibson uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. Ms. Gibson regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another. Ms. Gibson is a "debt collector" as the term is defined

and used in the FDCPA.

41.     Ms. Gibson (a) created the collection policies and procedures used by First

Network, Elite, AMG and ORG, and their employees and agents, in connection with their

common efforts to collect consumer debts, (b) managed or otherwise controlled the daily

collection operations of First Network, Elite, AMG and ORG, (c) oversaw the application of the

collection policies and procedures used by First Network, Elite, AMG and ORG, and their

employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by First Network, Elite, AMG and ORG, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Williams, (e) ratified the unlawful debt collection practices and procedures used by First Network, Elite, AMG and ORG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by First Network, Elite, AMG and ORG, and their employees and agents, in attempts to collect an alleged debt from Mr. Williams.

42.    Ms. Jackson directly and indirectly participated in the efforts to collect an alleged debt from Mr. Williams that are described in this complaint.

43.    Defendant Rostam Varahrami is a natural person, age 37, purportedly residing at 4 Pamlico, Irvine, California 92620. Mr. Varahrami is a manager, employee and agent of defendant ORG. Mr. Varahrami uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Varahrami regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Varahrami is a "debt collector" as the term is defined and used in the FDCPA.

44.    Mr. Varahrami (a) created the collection policies and procedures used by First Network, Elite, AMG and ORG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of ORG, (c) oversaw the application of the collection policies and procedures used by ORG, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by First Network, Elite, AMG and ORG, and their employees

12

and agents, to collect debts from consumers, including the tactics and scripts that were used to

attempt to collect an alleged debt from Mr. Williams, (e) ratified the unlawful debt collection

practices and procedures used by First Network, Elite, AMG and ORG, and their employees and

agents, in connection with their common efforts to collect consumer debts, and (f) had

knowledge of, approved, participated in, and ratified the unlawful debt collection practices used

by First Network, Elite, AMG and ORG, and their employees and agents, in attempts to collect

an alleged debt from Mr. Williams.

45.     Mr. Varahrami directly and indirectly participated in the efforts to collect an

alleged debt from Mr. Williams that are described in this complaint.

46.     Defendants and their employees and agents use multiple aliases when

communicating with consumers and operating their scam, including: Kelly Gibson; Michelle;

Christina; Jessica; and Tiffany.

47.     Defendants use a merchant account that they have established in the name of

Clear View Mediation, telephone number 833-561-7812, to receive credit card and debit card

payments from their victims. Money deposited in the merchant account is shared among and

distributed to the various participants in the scam, including all of the defendants named in this

complaint, their employees and agents, and perhaps others. The application that was filed with

the acquiring bank to create the merchant account, as well as the related monthly statements and

other account records, will need to be obtained from the acquiring bank via subpoena in

discovery, for the purpose of identifying the entities that receive distributions of money from the

merchant account and are involved in defendants' credit identity theft and debt collection scam.

48.     Plaintiff is proceeding against defendants collectively under a common enterprise

theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

49.     All defendants are intricately bound together and combine their efforts in a joint and common enterprise, using concerted efforts to collect debts allegedly owed by consumers throughout the United States. Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally for the unlawful acts of each defendant.

50.     Defendants operate as a single entity, commonly owned, operated and managed, operating from shared office space, sharing the same staff, equipment, supplies and telephonic services, and commingling revenue, expenses and payroll.

14

51.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

52.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.   Facts

53.     On or about August 17, 2005, plaintiff Thomas Williams obtained a loan from HSBC Auto Finance ("HSBC") and used the loan to purchase a 2005 Toyota Scion motor vehicle

(VIN JTLKT324054026216) for his daughter. HSBC assigned the loan transaction the account number 500002029701.

54.     Mr. Williams's daughter used the vehicle exclusively for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA.

55.     In 2007, Mr. Williams's daughter became unable to make her monthly payments to HSBC and the account went into default.

56.     In 2007, Mr. Williams's daughter surrendered the vehicle to HSBC.

57.     In 2007, HSBC sold the vehicle at auction and applied the sales proceeds to the loan balance.

58.     In 2007, HSBC charged off the remaining account balance.

59.     On October 29, 2007, Mr. Williams paid money to HSBC and settled the account.

60.     Mr. Williams denies owing any money to HSBC or any other entity in connection with the account.

61.     Mr. Williams refuses to pay any money to HSBC or any other entity in connection with the account.

62.     Even if Mr. Williams did not pay off the account, any obligation that Mr. Williams has or may have had to pay money in connection with the account is no longer judicially enforceable and time-barred by operation of the applicable four-year statute of limitations found in the Uniform Commercial Code.

63.     In 2008, HSBC ceased making auto loans and announced its plan to exit the auto lending market.

64.     Between 2008 and 2010, HSBC sold its entire portfolio of auto loan accounts to other entities.

65.     In 2010, HSBC Auto Finance went out of business and no longer exists.

66.     Despite the foregoing, the defendants named in this complaint somehow stole or otherwise acquired Mr. Williams's stolen account information along with Mr. Williams's stolen personal and financial information, and used that information to communicate with Mr. Williams and his relatives in efforts to coerce and extort the payment of money from Mr. Williams to supposedly satisfy a time-barred and non-existent debt, that Mr. Williams does not owe, and that defendants have no right to collect, as described below.

67.     On or about November 13, 2019, defendants' employee and agent placed a call to Mr. Williams's residential telephone and spoke with Mr. Williams. In the ensuing conversation, defendants' employee and agent, who identified herself as Christina, telephone number 833-561-7812, with Clear View Mediation, made the following representations and threats:

> (a)     Mr. Williams owed $12,897.00 to HSBC Auto Finance for an unpaid auto loan.
>
> (b)      Mr. Williams had not made a payment on the account since 2007.
>
> (c)     Clear View Mediation had been retained by HSBC to collect the debt from Mr. Williams.
>
> (d)     Lawyers working with Clear View Mediation had filed a lawsuit on behalf of HSBC and against Mr. Williams to collect the debt.
>
> (e)     The court had assigned the lawsuit a case number, Case No. TI88-8323.
>
> (f)     Mr. Williams was going to be served with a summons to appear in court.

17

(g)     HSBC and the lawyers had authorized Clear View Mediation to settle the account for $8,490.10.

(h)     If Mr. Williams did not agree to pay money to defendants, then the attorney was going to advance the litigation and set up a court date for Mr. Williams to appear before the judge.

(i)      Defendants had placed a lien on Mr. Williams's property, including Mr. Williams's 2015 Lincoln, with the VIN ending in FUJ10996.

Mr. Williams stated that he believed the debt was paid in 2007 and that he would check his records.

68.     On November 22, 2019, defendants' employee and agent placed another call to Mr. Williams's residential telephone and spoke with Mr. Williams. In the ensuing conversation, defendants' employee and agent, who identified herself as Christina, telephone number 833-561-7812, with Clear View Mediation, made the same representations and threats that were made in the initial conversation as described above. Mr. Williams again stated that he was not willing to enter into a settlement agreement because the debt had been paid. Defendants' employee and agent responded that Mr. Williams was being charged for defrauding a financial institution and that the Sheriff would be serving Mr. Williams at his residence with legal documents.

69.     On December 2, 2019, in response to defendants' false threats of criminal prosecution, civil litigation, property liens and other adverse consequences, and solely for the purpose of identifying and pursuing those entities in litigation, Mr. Williams authorized a payment to defendants in the amount of $100.00, that was made with a Visa debit card issued by JPMorgan Chase Bank, N.A. ("Chase). According to Chase, the payment was deposited into a

merchant account maintained in the name of "Clear View Mediation," located in California, with the telephone number 833-561-7812.

70.     According to Chase, defendants falsely categorized the payment as an "In Person" transaction for "Health & Wellness," but instead used the funds to satisfy a supposedly delinquent debt, in violation of defendants' merchant account contracts with Visa and MasterCard, as well as in violation of defendants' merchant account contract with the acquiring bank through which defendants established and maintain their merchant account. The name of defendants' acquiring bank and related account information will need to be obtained in discovery by sending subpoenas to Visa and the acquiring bank, as well as filing formal complaints with Visa, MasterCard and the acquiring bank regarding defendants' use of the merchant account to defraud consumers.

71.     On December 3, 2019, defendants used the name "Clear View Mediation" and the email address jessica.c@viewmediation.com to cause non-party DocuSign to send an email to Mr. Williams. The email linked to a letter agreement on the letterhead of "Clear View Mediation, 10620 Treena Street #230, San Diego, CA 92101, Phone 833-561-7812, Fax 714-786-8097, Email info@viewmediation.com," falsely stating that Mr. Williams owed $6,200.00 in connection with the HSBC Auto Finance Account No. 500002029701, and setting forth a proposed schedule for Mr. Williams to pay money to defendants. The letter agreement also contained legal mumbo-jumbo stating that "Upon receipt of final payment . . . CLEAR VIEW MEDIATION shall send a stipulation of discontinuance without prejudice to THOMAS WILLIAMS within 90 days," falsely implying that a lawsuit had been filed against Mr. Williams. Mr. Williams refused to sign the letter agreement. The email also linked to a DocuSign document

captioned "Certificate Of Completion," stating that the documents originated from "Clearview

Mediation, 12900 Garden Grove, Garden Grove, CA 92843, jessica.c@viewmediation.com, IP

Address: 216.231.0.247." The email also linked to a DocuSign document captioned "Electronic

Record and Signature Disclosure," stating that the documents originated from "Clear View

Mediation," with a contact email address kdaniel@viewmediation.com, which belongs to

defendant Kamisha Marie Daniel. The described email and linked documents are attached to this

complaint as Exhibit A.

72.     The above-described threats and representations made by defendants and their

employees and agents were false and part of a scripted and unlawful, criminal debt collection

practice that is ongoing and is currently being perpetrated by defendants to criminally extort the

payment of money from thousands of consumers across the country through the use of false

threats, intimidation, and unlawful harassment, often times on debts that are not owed and

through the use of unlawfully obtained account and personal information.

73.     Defendants and their employees and agents failed to meaningfully identify

themselves and their companies.

74.     Defendants and their employees and agents falsely represented the amount of Mr.

Williams's alleged debt.

75.     Defendants and their employees and agents falsely represented that they had the

right to collect the alleged debt.

76.     Defendants and their employees and agents falsely represented that they had been

retained by HSBC to collect the alleged debt.

77.     Defendants and their employees and agents falsely represented and falsely implied

that defendants had a legal department.

78.     Defendants and their employees and agents falsely represented and falsely implied that defendants managed litigation for lawyers.

79.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

80.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

81.     Defendants and their employees and agents falsely represented and falsely implied that defendants are lawyers.

82.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Williams to collect the alleged debt.

83.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Williams to collect the alleged debt.

84.     Defendants and their employees and agents falsely represented and falsely implied that a complaint had been filed against Mr. Williams.

85.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams was going to be served with a summons.

86.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams was going to be summoned to appear in court.

87.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Williams did not agree to pay money to defendants, then the attorney was going to advance the litigation and set up a court date for Mr. Williams to appear before the judge.

88.     Defendants and their employees and agents falsely represented and falsely implied that defendants had placed a lien on Mr. Williams's property, including Mr. Williams's 2015 Lincoln, with the VIN ending in FUJ10996.

89.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams had committed fraud and defrauded a financial institution.

90.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams had committed a crime.

91.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams was being charged with a crime.

92.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Williams was being criminally prosecuted.

93.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Williams did not pay money to defendants, then the Sheriff would be going to Mr. Williams's residence to serve Mr. Williams with court documents.

94.     Defendants and their employees and agents falsely represented and falsely implied that if Mr. Williams agreed that day to pay money to defendants, then defendants would stop a non-existent court proceedings.

95.     Defendants and their employees and agents falsely and wrongfully represented that Mr. Williams was being sued to collect a debt that is time-barred and unenforceable by operation of the applicable statute of limitations.

96.     Defendants did not intend to file a lawsuit against Mr. Williams in any court to collect the alleged debt.

97.     No Defendant has ever filed any lawsuit in any court to collect any debt from any consumer.

98.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

99.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

100.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

101.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

102.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

103.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

104.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. §

1692e(4).

105.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

106.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

107.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

108.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

109.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

110.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

111.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

112.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

24

113.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

114.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

115.    Defendants and their employees and agents failed to timely send to Mr. Williams a notice containing the information required by 15 U.S.C. § 1692g(a).

116.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

117.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

118.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

119.    In connection with efforts to collect an alleged debt from Mr. Williams, defendants obtained and used personal information regarding Mr. Williams and Mr. Williams's relatives from an internet skip-tracing database, such as LexisNexis Risk Management, Inc.

25

(Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC

(Delvepointe), or Interactive Data, LLC.

120.    The database used by defendants was derived in part from non-public motor

vehicle records and searches made with the database are subject to the terms of the Drivers

Privacy Protection Act. Subscribers to the database must sign an application stating that the

subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the

database, the subscriber is confronted with a screen that requires the subscriber to affirmatively

state the permissible purpose under the DPPA for which the subscriber is requesting the personal

information.

121.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

122.    The DPPA states:

>    (a) Procurement for unlawful purpose. – It shall be unlawful for any person
>    knowingly to obtain or disclose personal information, from a motor vehicle
>    record, for any use not permitted under section 2721(b) of this title.

>    (b) False representation. – It shall be unlawful for any person to make false
>     representation to obtain any personal information from an individual's motor
>    vehicle record.

18 U.S.C. § 2722.

123.    The DPPA also states:

>    "personal information" means information that identifies an individual, including
>    an individual's photograph, social security number, driver identification number,
>    name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

26

124. The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

125. The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

126. Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Williams and Mr. Williams's relatives.

127. Defendants used the database to obtain, disclose and use personal information regarding Mr. Williams and Mr. Williams's relatives.

128. Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Williams and Mr. Williams's relatives from Mr. Williams's and Mr. Williams's relative's motor vehicle records.

129. Alternatively, the entity that obtained Mr. Williams's and Mr. Williams's relative's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain the personal information.

130. It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

131. Defendants knowingly obtained, disclosed and used Mr. Williams's and Mr. Williams's relative's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

132. No defendant had a "permissible use" as the phrase is defined in the DPPA to

27

obtain, use or disclose Mr. Williams's or Mr. Williams's relative's personal information obtained from the database.

133.    No defendant had Mr. Williams's or Mr. Williams's relatives' consent, permission, authorization or waiver to obtain their personal information from the database.

134.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

135.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

136.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

137.    Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

138.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

139.    Plaintiff incorporates the foregoing paragraphs by reference.

140.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

141.    Plaintiff incorporates the foregoing paragraphs by reference.

142.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

29

b)      Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's

personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies

of any and all documents of any kind that contain any of plaintiff's personal

information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal

information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: October 7, 2020                          /s/ Phillip C. Rogers
                                                Phillip C. Rogers (P34356)
                                                Attorney for Plaintiff
                                                6140 28th Street SE, Suite 115
                                                Grand Rapids, Michigan 49546-6938
                                                (616) 776-1176
                                                ConsumerLawyer@aol.com